UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
FARRAH TELUSMA,               )
                              )
       Plaintiff,            )
                              )
       v.                    )    Civil Action No. 10-10814-NMG
                              )
MICHAEL ASTRUE,               )
Commissioner of Social Security, )
                              )
       Defendant.            )
_____)

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO AFFIRM THE COMMISSIONER'S DECISION

July 19, 2011

Boal, M.J.

      This is an action for judicial review of an administrative law judge's decision denying plaintiff Farrah Telusma's ("Telusma") applications for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Telusma asserts that the Commissioner's decision denying her such benefits – memorialized in a January 25, 2008 decision of an administrative law judge ("ALJ") – is in error, [Docket No. 13], and the Commissioner, in turn, has moved to affirm [Docket No. 15].[1] For the reasons contained herein, I recommend that the district court affirm the ALJ's decision.

---

[1] The parties' motions have been referred to this Court for a report and recommendation. See Electronic Order dated March 17, 2011.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. See 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. Rodriguez, 647 F.2d at 222; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. FACTS AND PROCEDURAL HISTORY

### A. Procedural History

Telusma filed applications for DIB and SSI benefits in April 2006, alleging disability since July 1, 2005. (Administrative Transcript ("Tr.") 112-24). These applications were denied

initially. (Tr. 77-82). Upon reconsideration by the state agency, Telusma's SSI application was denied. (Tr. 83-85). Telusma then filed an untimely request for an administrative hearing. (Tr. 86-87). Good cause was found for the late filing (Tr. 13) and a hearing was scheduled for October 2007. (Tr. 88). After Telusma failed to appear for the scheduled hearing, she was sent a show cause notice. (Tr. 102). Telusma's rescheduled hearing was held on January 10, 2008 before ALJ Sean Teehan. (Tr. 23-73). Telusma was represented by Andrew Forman, a non-attorney. (Tr. 25). The ALJ heard testimony from Telusma and from vocational expert Ruth Baruch. (Tr. 13, 24). On January 25, 2008, the ALJ issued a decision finding that Telusma was not disabled from July 1, 2005 through the date of the ALJ's decision. (Tr. 13-22).

Telusma sought review of the ALJ's decision by the Appeals Council. (Tr. 9). In support of her request, Telusma's representative filed a brief (Tr. 188-89) arguing that "new medical and lay evidence relating to the functional limitations resulting from [Telusma]'s learning disorder … demonstrates that this impairment meets the requirements of listing 12.02, organic mental disorders." (Tr. 188). Telusma also submitted four pieces of new evidence: (1) a Psychiatric Review Technique ("PRT") Form dated May 7, 2008 completed by Telusma's treating neurologist, Diler Acar, M.D. (Tr. 347-60); (2) an affidavit dated April 25, 2008 from Andrea Schwartz, the disability support services coordinator at Bunker Hill Community College, where Telusma was studying (Tr. 191); (3) an affidavit dated April 27, 2008 from Telusma's sister, Geraldine Telusma (Tr. 190); and (4) records from the Joseph M. Smith Community Health Center dated November 1998 through October 20, 2007 (Tr. 323-46). The Appeals Council denied Telusma's request for review, stating:

> In looking at your case, we considered the reasons you disagree with the decision in the material listed on the enclosed Order of Appeals Council. We found that

-3-

> this information does not provide a basis for changing the Administrative Law
> Judge's decision.

(Tr. 1-2). Accordingly, the ALJ's decision became the final decision of the Commissioner.

    B.    <u>Background</u>

Plaintiff was 38 years old at the time of the ALJ's decision in January 2008. (Tr. 28). She graduated from high school. (Tr. 30). She attended vocational training classes (Microsoft Office and home health aide) in the late 1990s. (Tr. 35, 136). As recently as 2007, she took courses in English writing, psychology, and computer training at Bunker Hill Community College, with assistance from the school's disability office. (Tr. 36-40). She obtained A's, B's, and C's. (Tr. 39). She has worked as a children's activity leader at a school, customer service representative, sales representative, security guard, home health aide, and housecleaner. (Tr. 40-47, 49, 132). Telusma testified that she last worked in 2006. (Tr. 40).

Telusma lives in a townhouse in Newton, Massachusetts with her four children. (Tr. 51-52). At the time of the administrative hearing, her children were 4, 5, 14, and 16. (Tr. 52). Telusma testified that her sister comes to her home three or four times a week to help with childcare and household chores. (Tr. 53, 55, 56). Both Telusma and her sister help the children with their homework. (Tr. 54-55). Telusma also cleans her home, does laundry, and shops for groceries with the help of her sister. (Tr. 55, 56, 58). Telusma testified that she does not cook often. (Tr. 55). She sometimes drives her sister's car and sometimes takes public transportation. (Tr. 57-58). Telusma handles her own funds and pays her bills. (Tr. 59).

    C.    <u>Medical Treatment Records</u>

In August 2005, Telusma underwent a physical examination at Joseph Smith Community Health Center. (Tr. 216). At that time, she reported that she was not working but was taking

some college courses. (Tr. 216). She complained of headaches and recently developed palpitations; she also reported leg and arm numbness after lying on one side for too long. (Tr. 216). She reported no psychological issues. (Tr. 216). Telusma also said she had a learning disorder, which gave her a hard time at school. (Tr. 216).

In October 2005, Telusma reported that she was doing okay but had intermittent headaches. (Tr. 213). In November 2005, Telusma reported no change in her headache pattern and said that she needed a physical examination for a new job she was starting. (Tr. 212).

In January 2006, Telusma complained of recent weight loss and intermittent dizziness and weakness. She described herself as being "very busy." (Tr. 209). In January 2006, Telusma also began treatment with Dr. Acar. (Tr. 281-82). Among other things, she told Dr. Acar that she suffered from "life-long" attention and organizational problems. (Tr. 281).

In February 2006, Telusma complained of fatigue and "feeling sad most days." She had quit working and was going to school. (Tr. 206). She also said she had intermittent low back pain. (Tr. 205).

In January-February 2006, Telusma underwent a neuropsychological consultative examination conducted by Mary-Ellen Meadows, Ph.D. (Tr. 192). She told Dr. Meadows that she had problems with concentration, attention, and memory, and often felt anxious. (Tr. 192). Telusma spent her days doing chores and helping her children with their homework. (Tr. 192). She was able to balance her checkbook. (Tr. 192). She wanted to return to school but was unsure if she could complete her classes. (Tr. 192). She had a history of migraine headaches since childhood, but these were currently alleviated by her treatment regimen. (Tr. 193). She was interested in returning to work but felt she had little time to look for work. (Tr. 193). Based

on testing, Dr. Meadows estimated that Telusma had low average intelligence. (Tr. 195). Psychomotor and information processing speed were slow, which affected her ability to do timed tests. (Tr. 195-96). English reading comprehension skills were in the middle elementary level. (Tr. 196). Memory scores were affected by Telusma's difficulties with encoding and attention, but there was no increased rate of forgetting and she benefitted from repetition. (Tr. 196). She seemed to show mild to moderate anxiety and depression. (Tr. 196). Dr. Meadows felt that antidepressant medication might improve Telusma's mood and processing speed. (Tr. 196). Dr. Meadows noted that Telusma had skills that she could use in a workplace. (Tr. 196).

In March 2006, Edison Miyawaki, M.D., Telusma's treating neurologist, indicated that Telusma suffered from migraines and depression but would benefit from vocational rehabilitation. (Tr. 197). Dr. Miyawaki felt that Telusma's condition significantly reduced her concentration and attention. (Tr. 198). Telusma's condition was guarded to good, depending on the extent to which she complied with her treatment regimen. (Tr. 198).

In April 2006, Telusma said she was doing better with her depression after being on antidepressants for three weeks. (Tr. 202). She was planning on taking a night shift job at an assisted living center. (Tr. 202).

In May 2006, Telusma told Brittany Silva, N.P. at the Joseph Smith Community Health Center that her headaches had improved but that she still had them around four times a month. (Tr. 200). She said she had increased stress because she was going to school for nursing and also had to take care of her four children. (Tr. 200). She had recently quit her job because she was having a hard time handling the night shift. (Tr. 200). Telusma was taking Prozac, which had been prescribed recently by her neurologist. (Tr. 200).

Dr. Meadows and Dr. Acar referred Telusma to Stacey Schamber, a licensed social worker, for educational and vocational rehabilitation and training. (Tr. 268). Telusma saw Ms. Schamber in April – July 2006. (Tr. 260-61, 264-65, 267-69). Ms. Schamber found that Telusma was oriented times four; her thought process was organized; there was no evidence of delusions or hallucinations; her affect was stable and appropriate; she seemed able to maintain attention; and her intelligence and insight appeared fair. (Tr. 269). Ms. Schamber did note that Telusma seemed tired and on occasion reported having a headache. (Tr. 264, 265, 269). Telusma told Ms. Schamber that her difficulties with learning and retention dated to her childhood. (Tr. 264). Telusma told Ms. Schamber that she had recently quit her job at an assisted living facility "because there was so much for her to deal with going to school, working, and caring for her children." (Tr. 265).

Although the ALJ offered Telusma the opportunity to submit updated evidence (Tr. 90, 106), no records were submitted to the ALJ relating to medical treatment during the remainder of 2006 or in 2007.

### D. Medical Opinions By Non-Treating Sources

In July 2006, Phyllis Sandell, M.D., a state agency physician, reviewed Telusma's medical records and completed a Physical RFC Assessment form in which she concluded that Telusma remained able to do light work. (Tr. 291-98).

In August 2006, Judy Capps, Ph.D. reviewed Telusma's records and completed a Mental RFC Assessment form and a Psychiatric Review Technique form. (Tr. 299-316). Dr. Capps concluded that Telusma could do routine tasks for two-hour periods over the course of an eight-hour day, was able to interact adequately with others, and could adapt to routine change. (Tr.

301).

E.   New Evidence Submitted To The Appeals Council

Telusma submitted four pieces of new evidence to the Appeals Council. The first was an affidavit dated April 25, 2008 from Andrea Schwartz, the coordinator of disability services at Bunker Hill Community College, describing the support services being provided to Telusma in connection with her courses at that school, which she apparently was still taking. (Tr. 191).

The second was an affidavit dated April 27, 2008 from Geraldine Telusma, one of Telusma's sisters, stating that she and her sisters and mother provided significant help to Telusma in connection with caring for her four children and handling household chores. (Tr. 190).

The third was a Psychiatric Review Technique Form dated May 7, 2008 completed by Dr. Acar. (Tr. 347-60). He opined that Telusma was markedly limited in terms of social and cognitive functioning, and in her ability to maintain concentration, persistence, or pace due to a learning disorder and developmental delay. (Tr. 348, 357). Dr. Acar wrote that he had "significant doubt" that Telusma could make sufficient income to support herself and her children because of her developmental delay, low average intelligence, and limited coping skills. (Tr. 359).

Finally, Telusma submitted records that covered her treatment at the Joseph Smith Community Health Center from 1998 through October 20, 2007. (Tr. 323-46). The only substantive report that described Telusma's more recent condition dated from September 2006. It indicated that while Telusma was still seeing her mental health counselor, she was no longer using antidepressants and was feeling well. (Tr. 336). In addition, shoulder complaints she had

been experiencing had improved. (Tr. 336). In addition, Telusma's headaches were described as "resolved." (Tr. 337).

## III. DISCUSSION

An individual is entitled to DIB benefits if, among other things, she has an insured status and, prior to its expiration, is disabled. See 42 U.S.C. § 423(a)(1)(A) and (E). Entitlement to SSI, on the other hand, requires a showing of both disability and financial need. See 42 U.S.C. § 1381a. Telusma's need, for purposes of SSI, and her insured status, for purposes of DIB, are not challenged.

### A. Disability Standard and the ALJ's Decision

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3)(A) (similar). An individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically

considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

. . . .

Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Telusma had not engaged in substantial gainful activity since the alleged onset of her disability (question 1); she had impairments which were "severe," namely, migraine headaches, learning disorder, and depression, but those impairments did not meet or medically equal one of the listed impairments in Appendix 1 (questions 2 and 3); and Telusma was able to perform her past relevant work as a security guard, a light, semi-skilled job (question 4). Accordingly, the ALJ concluded that Telusma does not suffer from a disability, and therefore he did not progress to question 5. (Tr. at 13-22).

    B.    <u>Plaintiff's Challenge to the ALJ's Decision</u>

Telusma argues that the ALJ's decision was erroneous in light of evidence submitted to the Appeals Council after the date of the ALJ decision.[2] Specifically, Telusma contends that the

---

[2] Telusma acknowledged at oral argument that she does not challenge the ALJ decision itself, and apart from the new evidence submitted to the Appeals Council.

Appeals Council committed an egregious error when it denied her request for review of the ALJ's decision in light of Dr. Acar's May 26, 2008 assessment, as well as two affidavits.

In <u>Mills v. Apfel</u>, 244 F. 3d 1, 5 (1st Cir. 2001), the First Circuit held that judicial review of an ALJ's decision must be based "solely on the evidence presented to the ALJ." The First Circuit noted, however, that the Social Security regulations allow a claimant to introduce new and additional evidence upon a request for Appeals Council review. <u>See id</u>. at 4. Recognizing a circuit split on the standard of review, the <u>Mills</u> court addressed this situation by holding that a reviewing court may consider additional evidence submitted to the Appeals Council where the Appeals Council's refusal to review the ALJ decision was based on "an egregiously mistaken ground." <u>See id</u>. at 5. The Court explained:

> the Appeals Council may have 'made a mistake' in refusing to consider new evidence presented to it, depending on the ground it gave . . . In such a situation, if the Appeals Council mistakenly rejected the new evidence on the ground that it was not material, we think a court ought to be able to correct that mistake . . ."

244 F.3d at 5. The Court provided for such limited review even though it assumed

> that the Appeal's Council's refusal to review would be effectively unreviewable if no reason were given for the refusal. This is not a serious anomaly; there is reason enough to correct an articulated mistake even though one cannot plumb the thousands of simple 'review denied' decisions that the Appeals Council must issue every year.

<u>Id</u>. at 6. In <u>Mills</u>, the Appeals Council stated that the evidence was "consistent" with the existing records and therefore did not justify disturbing the ALJ's decision. The Court found that such assessment was owed "great deference" even though "it was not beyond review in extreme cases." <u>Id</u>. In <u>Mills</u>, after reviewing the new evidence, the Court found that the language "was not perfectly apt" but, after speculation as to what the Appeals Council may have

-11-

meant, found the Appeals Council action to be entirely reasonable. Id. at 7.

Since Mills, courts have offered seemingly disparate interpretations of the "egregiously mistaken" standard of review. Compare Anderson v. Astrue, 682 F. Supp. 2d 89, 98 (D. Mass. 2010) (Appeals Council decision mistaken and oversimplified but reasonable); Gaboury v. Astrue, No. 08-319, 2009 WL 2971535, at *13 (D.R.I. Sept. 16, 2009) (Appeals Council's "boilerplate" decision not egregiously mistaken); Thibodeau v. Astrue, No. 08-cv-308-JD, 2009 WL 903851, at *5 n. 6 (D.N.H. Mar. 31, 2009) (same) with Brennan v. Barnhart, No. 05-123-P-H, 2006 WL 217987, at * 2 (D. Me. Jan. 25, 2006) (Appeals Council decision egregiously mistaken where new evidence supported a basis for changing the ALJ's conclusion); Ortiz Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (impossible to determine whether Appeals Council decision was egregiously mistaken where it did not provide reasons); St. Pierre v. Massanari, No. 01-99-P-C, 2001 WL 1502571, at * 3 (D. Me. Nov. 26, 2001) (Appeals Council statement is not reasonable and the new material evidence does in fact require a different outcome).

This court agrees with much of the sentiment expressed by the Ortiz Rosado court. In that case, the court noted that "if the Appeals Council is going to be afforded a highly protective standard, i.e. egregiousness, by which its decisions are to be reviewed, it must offer more than a boilerplate justification for its decision." Ortiz Rosado, 340 F. Supp. at 68. Nevertheless, the court also noted that "even a cursory review of the evidence proffered by Plaintiff to the Appeals Council reveals it was new and material and, perhaps, contrary to the weight of the other evidence." Id.

Here, the Appeals Council acknowledged the additional evidence submitted by Telusma,

but concluded that it did not provide a basis for changing the ALJ's decision. The Appeals Council provided no detail regarding the basis for its decision. It simply stated "[w]e found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-2).[3] The Commissioner has correctly characterized the Appeals Council decision as "generic." Nevertheless, the Court finds that the Appeals Council's refusal to review the ALJ's decision was not egregiously mistaken.

Telusma offered four additional pieces of evidence to the Appeals Council[4]: (1) a Psychiatric Review Technique ("PRT") form dated May 7, 2008 and completed by Telusma's treating neurologist, Dilar Acar, M.D. (Tr. 347-60); (2) an affidavit dated April 25, 2008 from Andrea Schwartz, the disability support services coordinator at Bunker Hill Community College, where Telusma took courses (Tr. 191); (3) an affidavit dated April 27, 2008 from Telusma's sister Geraldine Telusma (Tr. 190); and (4) records from Joseph M. Smith Community Health Center dated October 20, 2007 through November, 1998 (Tr. 323-46). [5]

The two affidavits were not of such weight to overcome the deference owed the Appeals

---

[3] This same language was the subject of, inter alia, the Ortiz Rosado, St. Pierre, and Gaboury decisions.

[4] Pursuant to Social Security regulations, additional evidence submitted after the ALJ's opinion is issued must relate to a period before the date of the decision. See 20 C.F.R. Section 404.970(b). Here, items one through three identified above are all dated after the ALJ's decision. Nevertheless, the PRT explicitly references testing completed in 2006 and therefore may have properly been considered by the Appeals Council. The other affidavits, which are dated several months after the ALJ's decision, contain no indication as to whether the contents related to a time period before or after the ALJ's decision. Therefore, it is unclear whether these affidavits should have properly been considered by the Appeals Council.

[5] As discussed below, Telusma does not rely on the Joseph M. Smith documents in arguing that the ALJ's decision was erroneous in light of the evidence submitted to the Appeals Council after the date of the ALJ decision.

Council decision. The Schwartz affidavit does provide additional details about the assistance provided to Telusma at Bunker Hill Community College. Telusma, however, had already emphasized during her hearing testimony that she received special help. (Tr. 37-39; 65-66). Moreover, the ALJ did not find that she was able to do college-level work, but that she was limited to simple, routine work tasks. (Tr. 19).

The Telusma affidavit also provided very little new information. Telusma testified that her sister provided a great deal of help to her. She testified that her sister helped three to four times a week with childcare and house work. (Tr. 54-55). The sister also helped with grocery shopping. (Tr. 58). The Telusma affidavit did not materially change the evidence presented to the ALJ.

In her briefs, Telusma does not argue that the Joseph M. Smith records provide a basis for re-examining the Appeals Council decision. Indeed, the records add little to the analysis. Some of the records document Telusma's request for treatment for headaches (Tr. 328, 334) and that she suffered from chronic depressive disorder and headaches (Tr. 326, 333). The records also indicate that she was not using her psychological meds anymore (Tr. 336), was feeling well (Tr. 336) and that her headaches had resolved (Tr. 337).

The May 7, 2008 form completed by Dr. Acar is potentially the most significant piece of new evidence. This form potentially bears on the ALJ's finding under step three of the sequential evaluation process. At that stage, if an ALJ finds that the claimant suffers from one of the listed impairments in the social security regulations, a claimant is disabled. See 20 C.F.R. § 416.920(d). The burden, however is on Telusma to produce evidence that she satisfies the criteria for a particular "listed" condition. Mills, 244 F. 3d at 6.

Here, the ALJ found that Telusma's impairments (namely migraine headaches, learning disorder and depression) were severe but did not meet or equal the listing governing those conditions. (Tr. 18). He noted that Telusma did not meet the requirement that she must have a marked restriction in at least two of the following: daily activities, maintaining social functioning, maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended durations. (Tr. 18). On the May 7, 2008 form, Dr. Acar checked the boxes indicating that Telusma had marked difficulties in maintaining social functioning and difficulties in maintaining, concentration, persistence or pace. (Tr. 346, 348). Accordingly, Telusma argues that "this evaluation by Dr. Acar meets the standard" required by the ALJ. (Telusma Mem. at 9).

Nevertheless, the opinion of a treating physician on the ultimate issue of disability (or indeed on whether a Listing has been met or equaled) is not entitled to any special significance. See 20 C.F.R. §§ 404.1527(e)(1)-(2), 416.927(e)(1)-(2). In addition, the medical opinions of a treating physician are entitled to controlling weight only when they are both medically well supported and not inconsistent with other substantial evidence in the records. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Here, Dr. Acar's 2008 form is at odds with the other medical evidence of record. For example, a medical report dated September 22, 2006 showed that Telusma was doing well, despite having stopped her use of anti-depressants and her headaches were resolved. (Tr. 336-37). An earlier report dated June 14, 2006 also indicated that Telusma was feeling better and had found a job as a health aide in an assisted living facility. (Tr. 263). Indeed, the 2008 form itself does not state Telusma is unable to work. Rather, it states "her low intellectual capacity disables her professional and vocational opportunities. I have

significant doubt that she will be able to make significant income to take care of herself and her children." (Tr. 359).  Under such circumstances, remand is not warranted.

## IV. CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT the Commissioner's Motion to Affirm [Docket No. 15], and AFFIRM the Commissioner's decision.

## V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge